OPINION OF THE COURT
Lillian Wan, J.
The following decision memorializes the court’s oral decision which was issued on the record on August 4, 2017. In this Family Court Act article 3 juvenile delinquency matter, the central issue is the respondent’s competency to stand trial.
The respondent, Justin L., age 14, first became known to the court as a subject child on a child protective case. On December 1, 2016, the Administration for Children’s Services (hereinafter ACS) filed neglect petitions against Justin’s mother alleging that the mother was failing to meet the needs of Justin, then age 13, who was diagnosed with autism, had cognitive limitations, and functioned at a kindergarten grade level. The petition further alleges that Justin attempted to cut his mother with a knife, and that the mother allowed Justin to take public transportation without supervision despite school officials’ recommendations that he needed constant supervision. Justin’s four other siblings are alleged to be derivatively neglected. Justin was initially remanded to ACS and his siblings remained in the care of the mother under ACS supervision. Justin was placed with Hawthorne Cedar Knolls and transferred to Geller House. On January 18, 2017, the Corporation Counsel of the City of New York (hereinafter Presentment Agency) filed a juvenile delinquency petition against Justin, with the top charge being robbery in the third degree under Penal Law § 160.05, a D felony. The petition alleges that on or about November 21, 2016, the respondent punched a 12-year-old complaining victim in the face and took money and a grocery bag. On the delinquency matter, Justin was paroled to ACS.
After several conferences with the court, the child neglect petitions were resolved with the mother signing a voluntary *1169 placement agreement for Justin, placing Justin into foster care with ACS. All neglect petitions were withdrawn.
Meanwhile, a suppression hearing was scheduled on Justin’s delinquency matter for June 16, 2017. Late in the afternoon of June 15th, at counsel’s request, this court held a bench conference with the Presentment Agency and the Attorney for the Child, where the court was informed that Justin had gone absent without leave or AWOL from his foster care placement and went to the home of his mother. The Attorney for the Child sought an adjournment of the suppression hearing, and asked that Justin not be produced for the June 16th court appearance as the plan was for Justin to be transported from his mother’s house to the Edenwald Center, a residential treatment center in Pleasantville, New York. Speedy fact-finding was waived by the Attorney for the Child. The court granted this request and adjourned the matter to July 11, 2017. On June 16, 2017, the court learned that Justin was still produced in the Family Court and that Justin became extremely distressed out in the waiting area and repeatedly banged his head on the wall and asked a court officer to shoot him with his gun. As a result, Justin was taken to the hospital. Justin was subsequently released back to the care of ACS.
On July 5, 2017, another juvenile delinquency petition was filed against Justin with the top charge being sexual abuse in the first degree under Penal Law § 130.65 (1), a D felony. The charges in this petition were based on an incident from November 3, 2016, which occurred in and around a subway station. The complaining victim alleges that the respondent followed her out of the train station and subjected her to sexual contact. The respondent was remanded to the Division of Youth and Family Justice (hereinafter DYFJ) for secure detention. At the request of the Attorney for the Child, DYFJ was further directed to immediately bring Justin to Bellevue Hospital for a full mental health evaluation pursuant to Family Court Act § 322.1 in order to determine the respondent’s capacity to proceed. (See order directing detention of Hon. Ben Darvil, Jr., dated July 5, 2017.) The Attorney for the Child requested a court order directing that Justin not be produced for the next court date. The Attorney for the Child also waived speedy arraignment on this case.
On July 11, 2017, a third juvenile delinquency petition was filed against the respondent, with the top charge being attempted rape in the first degree under Penal Law §§ 110.00, *1170 130.35 (1), a B felony. This arrest arose out of an incident that occurred on June 29, 2017 where the 13-year-old complaining victim alleges, among other things, that the respondent grabbed her breasts and vagina in an elevator. The court notes that Justin was in the care of ACS at the time of this alleged incident. At the July 11th court appearance, the court was informed that the respondent was brought to Bellevue, but then released back to detention once he was assessed to not be a danger to himself or others. Bellevue did not conduct the capacity evaluation pursuant to Family Court Act § 322.1 as ordered by the court on July 5th. The Attorney for the Child expressed that she wanted the competency evaluation to be done in an inpatient hospital setting and sought an adjournment to July 13, 2017 to ascertain if there was a way to get this accomplished. The Attorney for the Child continued to waive speedy arraignment on the petition filed on July 5th and waived speedy arraignment on the newly filed delinquency petition. Speedy fact-finding on the original robbery charge was also waived and the court also found good cause to adjourn.
On July 13, 2017, the Attorney for the Child informed the court that there may be a contract that precludes Bellevue doctors from completing such evaluations for children who are remanded to the custody of DYFJ. There was much discussion on and off the record about whether the doctors at Bellevue or Kings County Family Court Mental Health Services Clinic (hereinafter MHS) should do the evaluation and where they would do such evaluations. On consent and at the request of counsel, the court issued an order directing that Justin be remanded directly to Bellevue, for an examination pursuant to Family Court Act § 322.1 by two qualified psychiatric examiners to determine if he is mentally ill, mentally retarded or developmentally disabled. The order also directed that the examination determine whether the respondent is an incapacitated person. The matter was adjourned to July 18, 2017, and speedy arraignment and speedy fact-finding was waived on the pending dockets.
On July 18th, counsel for New York City Health and Hospitals/Bellevue appeared and informed the court that Bel-levue doctors are not trained to conduct capacity evaluations pursuant to Family Court Act § 322.1 on adolescents. Additionally, counsel conveyed logistical problems with having Justin on an inpatient wing in the hospital and a concern that Justin would be “unsafe” on a unit with other children who have psy *1171 chiatric diagnoses. Counsel further indicated that Bellevue would be able to provide the facilities for such an evaluation but their doctors could not do the evaluations. Counsel indicated that she had already been in touch with MHS about their psychologists conducting the evaluations. Recognizing that any delay on the case meant that Justin would be extending his stay in secure detention, the court determined that the most efficient way to proceed was to have the court’s MHS clinic do the evaluations. Therefore, the court directed MHS to send two qualified psychiatric examiners to conduct the competency evaluation at Justin’s secure detention site. The court did not see a real value to transporting Justin, an emotionally fragile child who has made threats of self-harm, to an unfamiliar environment, just to have use of Bellevue’s physical space for the evaluation, especially in light of the fact that Bellevue doctors would not be able to evaluate Justin. The court was satisfied that in the event of an emergency, the detention site had adequate protocols in place to provide Justin with any necessary intervention. The matter was adjourned to July 28, 2017.
At the July 28, 2017 court appearance, the examination reports were received by MHS, and both examiners concluded that the respondent is an incapacitated person and lacks the capacity to understand the proceedings or to assist in his own defense. Pursuant to Family Court Act § 322.2 (1), the court adjourned the matter for a hearing to determine whether the respondent is an incapacitated person. As required by statute, the court directed the Presentment Agency to notify the Commissioner of Mental Health and the Commissioner of Developmental Disabilities of the hearing. Counsel continued to waive speedy fact-finding and speedy arraignment on all dockets. Also on July 28th, a fourth juvenile delinquency petition was filed against the respondent, the top charge being sexual abuse in the third degree under Penal Law § 130.55, a B misdemeanor, alleging that on or about November 21, 2016, while in the Coney Island Stillwell Avenue F subway station, the respondent subjected the complaining victim to unwanted sexual contact. The court noted the delay in filing this petition, since the alleged incident occurred over eight months prior, and questioned the purpose of pursuing such charges especially given the current procedural posture of the case. Significantly, pursuant to the request of his attorney, Justin was not produced in the courtroom for any of the July court appearances. The matter was adjourned to August 4, 2017.
*1172 On August 4th, counsel for the Office of Mental Health (hereinafter OMH) and counsel for the Office for People with Developmental Disabilities (hereinafter OPWDD) both appeared. A child psychiatrist from OMH and a psychologist from OPWDD also appeared on the record. The court received the examination report of MHS psychologist Dr. Bryan Stuart as court’s exhibit 1 and the examination report of MHS psychologist and Clinic Director Dr. Adam Bloom as court’s exhibit 2. The clinical report that was prepared jointly by Dr. Stuart and Dr. Bloom was received as court’s exhibit 3. Both the Presentment Agency and the Attorney for the Child consented to a finding that the respondent is incapacitated. Counsel for OMH and OPWDD, who were both provided with the examination reports and the clinical report prior to the hearing date, also consented to the finding of incapacity. However, counsel for OPWDD did ask the court to note OPWDD’s objection to the “Brief Cognitive Assessment” that was annexed to the clinical report. Given the parties’ consent to the finding of incapacity, the court found that there was no factual issue to warrant a full hearing. (See Matter of Terrance W., 251 AD2d 1004 [4th Dept 1998] [finding that no hearing necessary when the Presentment Agency concedes that the respondent is an incapacitated person and the respondent raises no factual issue]; see also People v Rivers, 44 AD3d 391 [1st Dept 2007] [indicating that a finding of incompetency may be confirmed on consent without a hearing].)
Both Dr. Bloom and Dr. Stuart diagnosed Justin with intellectual disability, autism spectrum disorder with accompanying intellectual impairment and attention deficit hyperactivity disorder (hereinafter ADHD)—combined presentation. Both psychologists concluded that by reasons related to Justin’s diagnoses, Justin did not understand and/or appreciate the nature and seriousness of the charges against him, the nature and/or purpose of a trial, the roles and functions of various court personnel, and/or the potential consequences of the current proceedings. Specifically, both psychologists reported that Justin was inadequately able to describe the role of the judge, his attorney, and opposing counsel. He did not understand the concept of guilt and was unable to appreciate the consequences or benefits of a plea agreement. In assessing Justin’s ability to cooperate with counsel, he was unable to provide a coherent narrative in response to any questions asked of him. His understanding of the passage of time impressed as impaired. He did not understand the process of a trial.
*1173 In assessing Justin’s cognitive abilities, a brief screening measure was used and he was found to be in the “extremely low” range. In terms of his mental status, both psychologists noted that Justin’s attention and concentration were poor and were highly impulsive, and a preoccupation with fighting was voiced during the interview. Justin told the evaluators that he is prescribed psychiatric medication but he did not know the name of the medication or its purpose. Justin also inaccurately reported that he is in the 12th grade. The evaluators concluded that Justin’s ability to rationally process and discuss information essential to these proceedings impressed as significantly impaired. Furthermore, his ability to comprehend and discuss the material at hand appeared to be hampered by an intellectual disability as well as symptoms of an autism spectrum disorder and ADHD. Both Dr. Bloom and Dr. Stuart described Justin’s prognosis as poor and therapeutic interventions as unlikely to significantly improve his functional skills. Dr. Bloom confirmed that Justin has multiple diagnoses including developmental delay, mental illness and intellectual disability. Dr. Bloom stressed that Justin meets the criteria for all three diagnoses which are explicitly enumerated in Family Court Act § 322.1 (1). The record also established that Justin was previously diagnosed with conduct disorder and attention deficit disorder and that he is currently prescribed Ability, an antipsy-chotic drug, as well as Concerta, which targets ADHD. Based on the consent of counsel and the record before the court, the court entered a finding that Justin is an incapacitated person under the statute.
Family Court Act § 322.2 (3) states that once the court finds that the respondent is an incapacitated person, the court shall hold a hearing to determine whether there is probable cause to believe that the respondent committed a crime. In the instant matter, the Attorney for the Child waived the probable cause hearing and consented to a finding that there is probable cause to believe that the respondent committed robbery in the third degree under Penal Law § 160.05, a D felony.
In the case of a felony, once the court finds probable cause to believe that the respondent has committed a felony, the court “shall order the respondent committed to the custody of the commissioner of mental health or the commissioner of developmental disabilities for an initial period not to exceed one year from the date of such order.” (Family Ct Act § 322.2 [5] [a].) Commitment to OMH or OPWDD are the only two options *1174 available to the Family Court. The statute does not authorize anything in between and there is no ambiguity in the word “shall.” (See New Amsterdam Cas. Co. v Stecker, 3 NY2d 1 [1957] [noting that where the language employed by the legislature is clear, succinct and unequivocal, resorting to rules of construction is unnecessary and impermissible].)
The court notes that the analogous statute in a criminal proceeding is Criminal Procedure Law § 730.50 (1), which allows the court to commit an incapacitated defendant to the custody of the Commissioner of Mental Health for care in an appropriate institution, or upon consent of the district attorney, to commit the defendant to the custody of the Commissioner “for care and treatment on an out-patient basis.” This option is not available to the Family Court in any proceeding brought under article 3 of the Family Court Act. In People v Betty Y. (39 Misc 3d 579 [Sup Ct, Kings County 2013]), the court noted that the Criminal Procedure Law was amended on March 30, 2012, to include the outpatient treatment option, and prior to this amendment, the only option after an incapacity finding was to remand a defendant to jail until the Office of Mental Health was able to transfer an incapacitated individual to a hospital for treatment, which often resulted in severe hardship for emotionally fragile defendants.
In the instant case, it would not have been appropriate for Justin to return to his mother for outpatient treatment, especially in light of the fact that she voluntarily placed him into foster care because she was not able to meet his needs at home. However, if the Family Court had the same discretion as the Criminal Court, the court might have been able to entertain other outpatient treatment options for Justin, even while in the care of an ACS operated placement. However, the statute leaves the court with no discretion.[1] The statute also restricts the court on the disposal of the pending juvenile delinquency petition. Notably, on misdemeanor cases only, the statute explicitly states that upon a finding that there is probable cause to believe that the respondent committed a misdemeanor, the respondent shall be committed to the custody of the ap *1175 propriate Commissioner for up to 90 days and that the court “shall dismiss the petition on the issuance of the order of commitment.” (Family Ct Act § 322.2 [4].) The court is constrained by the statute and does not have the option of dismissing the petition in a felony case upon entering an order of commitment. (See Matter of James C., 44 AD3d 1148 [3d Dept 2007] [reinstating the petition where the Family Court found probable cause to believe that the respondent committed the felony of sexual abuse in the first degree and dismissed the juvenile delinquency petition].) The lack of flexibility in a statute that governs children who have been found to lack capacity to understand the proceedings appears inconsistent with the general purpose of the Family Court Act, which is “to empower Family Court to intervene and positively impact the lives of troubled young people while protecting the public.” (Matter of Robert J., 2 NY3d 339, 346 [2004]; see also Family Ct Act § 301.1.) The purpose is not punishment. The Family Court is “given a wide range of powers for dealing with the complexities of family life so that its action may fit the particular needs of those before it.” (Family Ct Act § 141.) Significantly, Justin is also dually involved in the child welfare system, and he was residing in foster care immediately prior to being remanded to DYFJ in July. Ideally, the court would have more options for Justin, a youth who is being served by the juvenile justice system and the child welfare system, not less.
In the instant matter, the issue of which state agency, OMH or OPWDD, Justin should be committed to became the subject of contention. While the Presentment Agency took no position on this issue, the Attorney for the Child and Justin’s mother advocated for Justin to be committed to OMH. The Attorney for the Child asserted that in addition to the diagnosis of a developmental disability and Justin’s behavior in the courthouse, Justin had also been previously diagnosed with post-traumatic stress disorder and conduct disorder.[2] The Attorney for the Child indicated that OMH, which has hospital placements, is the only realistic available option and that OPWDD does not have residential facilities for children, and that Justin would likely be placed in a facility with all adults if committed to the custody of OPWDD. The court provided both counsel for *1176 OMH and OPWDD, and their doctors, with an ample opportunity to be heard on this issue. Both counsel strenuously argued that Justin should not be placed with their agency. It was surprising to this court to learn from counsel for OPWDD that OPWDD does not have any appropriate placements for a 14-year-old child in the entire state of New York. Counsel informed the court that OPWDD has two upstate facilities, Sunmount and Valley Ridge, both locked facilities that only contain adult residents with developmental disabilities who come to the facility after being declared by a criminal court judge to be incompetent to stand trial under Criminal Procedure Law article 730. Neither counsel nor the OMH psychologist were aware of any children being at those facilities. Counsel further indicated OPWDD does have individualized residential alternatives or “IRAs” but most of those facilities house adults, and there is no availability in those facilities that do house children. Counsel further described another option known as a “voluntary agency,” which is an agency that OPWDD issues an operating license to, however none of those agencies are able to accept Justin into their facility. Counsel indicated that OPWDD has historically been an agency that services adults after they age out of foster care at 21 and that their “system was never set up” to service children. Counsel stated that in the past there were small units in Brooklyn and out in Broome County that would take children but those places no longer exist. In all likelihood, if Justin was committed to OPWDD, he would be placed at Sunmount or Valley Ridge. Counsel for OPWDD argued that it would be more appropriate for the court to commit Justin to OMH, where there are placements for children, including hospital settings.
Counsel for OMH argued that Justin should be placed with OPWDD because “OMH does not have the expertise nor the skill” to provide restoration services to individuals with developmental disabilities and the agency does not have the resources to provide “one-to-one” supervision over Justin. Counsel indicated that OMH “can’t have vulnerable psychotic children be on the same unit commingled with Mr. L.” In arguing why OPWDD is the more appropriate agency for Justin, counsel for OMH asserted that she personally called Sunmount and ascertained that they do have one 16-year-old resident there. The OMH psychiatrist did confirm that OMH does serve children who are dually diagnosed with a mental illness and a developmental disability, and that OMH does have multiple *1177 placement options for children, although it was uncertain where exactly Justin would be placed given Justin’s needs and the needs and safety of their other residents.
Having considered the entirety of the record, it appears that neither OMH nor OPWDD is the ideal placement for Justin. The court is dismayed to hear that neither agency believes that they can provide the services or care that Justin needs; however, the court is constrained by the statute to choose one or the other. As such, the court finds that Justin’s best interests will be served with an order committing him to the custody of the Office of Mental Health. Justin is a 14-year-old boy. It is not appropriate for Justin to reside in an OPWDD facility with all adults, or even in a facility with all adults plus one 16 year old, who may be placed there pursuant to the criminal justice system. Justin has multiple diagnoses, including both developmental disability and mental illness, and OMH is best equipped to provide treatment and services to him.
Family Court Act § 322.2 (5) (d) requires the Commissioner of Mental Health to review the condition of the respondent within 45 days of the commitment, and then conduct a second review within 90 days. Thereafter the Commissioner must conduct reviews of the respondent every 90 days. The Commissioner “shall appl/’ for an order dismissing the petition if the Commissioner determines that there is a substantial probability that the respondent will continue to be incapacitated for the foreseeable future. The Attorney for the Child can also apply to the court for an order dismissing the case on the same ground.
At this time, the court is constrained to maintain the petition filed on January 18, 2017, as it is a felony charge. Based on the above, the court finds that there is both good cause and special circumstances to hold the fact finding in abeyance until such time that the respondent is deemed to not be an incapacitated person. With regards to the three pending petitions where the respondent has not yet made an initial appearance to be arraigned, the Presentment Agency has indicated that they wish to go forward with those matters. Noting that speedy arraignment has been waived by the Attorney for the Child and that the Attorney for the Child has specifically requested that the respondent not be produced for arraignment on those three petitions, the court finds good cause to adjourn the arraignments.

. Interestingly, the court notes that counsel for OPWDD articulated on the record that once an individual is committed to the custody of OPWDD, OPWDD has the discretion to allow the respondent to reside in the home with his mother and provide services on an outpatient basis. Counsel further asserts that under Family Court Act § 322.2 (5) (c), a residential facility is only mandated if the individual has committed a designated felony act.

. The clinical report of Dr. Bloom and Dr. Stuart indicates that in connection with their evaluations of Justin, the examiners reviewed a psychological evaluation of Justin, dated January 16, 2017, as well as a psychiatric evaluation of Justin, dated January 17, 2017 and February 13, 2017.